(No. 15405.—Order affirmed.)

E. J. Boorde *et al.* Defendants in Error, *vs.* The Indus-
trial Commission *et al.*—(John Benham *et al.* Plain-
tiffs in Error.)

*Opinion filed October 20, 1923—Rehearing denied Dec. 7, 1923.*

1. Workmen's compensation—*Compensation act does not ap-
ply to every accidental injury.* The Compensation act does not
apply to every accidental injury that may happen to an employee
during his employment but the injury contemplated by the act
must have its origin in some risk of the employment.

2. Same—*when risk is incidental to employment.* A risk is in-
cidental to an employment when it belongs to or is connected with
what a workman has to do in fulfilling his contract of service, and
it is not incidental where it is unconnected with such duties.

3. Same—*it is not enough that an accident happens during the
course of the employment.* To come within the Compensation act
it is not enough that the accident happens during the course of the
employment, but it must also arise out of the employment, have its
origin therein and be the result of some risk attendant upon the
employment which is reasonably incidental to it.

Writ of Error to the Circuit Court of Vermilion
county; the Hon. John H. Marshall, Judge, presiding.

Jones & Levin, for plaintiffs in error.

Thomas H. Murray, for defendants in error.

Mr. Justice Dunn delivered the opinion of the court:

Caroline Benham, a girl seventeen years old, employed
by the defendants in error, doing business as the Hoopeston
Telephone Company, was killed by falling down an elevator
shaft on January 26, 1922. Her parents claimed compen-
sation and an arbitrator made an award of $1650, which
the Industrial Commission set aside. The circuit court of
Vermilion county quashed a writ of *certiorari* sued out to
review the order of the commission, and a writ of error
was allowed to bring the record before us for review.

The only question is whether the death arose out of and in the course of the employment. Caroline Benham had been in the employment of the defendants in error as a telephone operator for about a year. The regular hours of her employment were from eight o'clock in the morning to one in the afternoon and from six to nine in the evening. She was entitled to a rest period of thirty minutes, which was allowed to all the operators because it was supposed to add to their efficiency. Her rest period was from 10:30 to 11:00. The operators were also permitted to exchange hours, and on January 26 Caroline exchanged time with another girl, and in consequence was on duty from three to six in the afternoon with a rest period of thirty minutes from 3:30 to 4:00, while the other girl was to take Caroline's time from six to nine. During the rest period the operators were permitted to go freely wherever they chose. No rest room or other special place was provided for them but they were left wholly to their own devices and might leave the premises altogether. They sometimes rode up and down in the elevator of the building merely for recreation. The telephone exchange was on the third floor of the Willdon building,—a five-story building which fronts west on Market street, the first floor of which was occupied by a department store. There were two elevators near the northwest corner of the building, running from the basement to the fifth floor. The entrance to the elevators was from the south, and the north wall of the elevator shaft was the north wall of the building. There was a space of about a foot from the elevator to the north wall of the shaft. On the north side of the west elevator, in the northeast corner, there was a second door, and on the third floor there was an opening in the north wall of the building into a covered way, which connected that floor with the third floor of the McFerren Bank building, which was north of the Willdon building and across an alley. When the elevator was at the third floor of the building the door in the

northeast corner of the elevator was opposite the opening
to this covered way. Immediately over this covered way
were windows in the north wall of the building on the
fourth and fifth floors. These windows were three feet
wide and at least five feet high. They were set back in
the wall about four inches and the ledge inside slanted
down to the inside of the wall. When the floor of the ele-
vator was opposite the fifth floor it was also opposite this
slanting ledge. Miss Benham got on the elevator at the
third floor at 3:30 o'clock and rode down to the first floor.
She operated the elevator going down and afterward ran it
from the first to the fifth floor, stopping it about four inches
below the floor, because if it went too far above, as Inez
Sargent, the operator, testified, "the car goes off." Miss
Benham opened the north door and sat on the ledge of the
window, saying she wanted to see what time it was. There
was a clock tower and a clock which could be seen from
this north window. Inez opened the south door and was
sitting on the stool in the southwest corner of the car. In
a moment or two the bell rang from the first floor and Inez
left her seat to answer the call when she heard Caroline
scream, "Inez!" She had not started the car, and on turn-
ing around she saw nothing of Caroline except her foot
above the bottom of the car. Caroline fell to the bottom
of the shaft and received injuries from which she died.

Caroline Benham's only duties were answering calls and
making connections for users of the telephone. During the
half hour of her rest period she had no duties to perform.
She was at liberty to go where she pleased and occupy her-
self as she pleased. She could leave the premises of her
employers, and, so far as her obligation to them was con-
cerned, might engage in any occupation or form of activity
she chose. Her only duty to them was to take up her work
again at four o'clock. In the meantime she was the mistress
of her own time and action. Whether the accident occurred
in the course of her employment is not material unless it

also arose out of her employment, had its origin in her employment and was the result of some risk attendant upon her employment which it can now be seen might have been reasonably contemplated as incidental to it. (*Weis Paper Mill Co.* v. *Industrial Com.* 293 Ill. 284.) The Workmen's Compensation act does not apply to every accidental injury which may happen to an employee during his employment. It does not make the employer an insurer against all injuries. The injury contemplated by that act must have had its origin in some risk of the employment. (*Edelweiss Gardens* v. *Industrial Com.* 290 Ill. 459.) "The employer is liable for compensation only for an injury which occurs to the employee while performing some act for the employer in the course of his employment or incidental to it." (*Fairbank Co.* v. *Industrial Com.* 285 Ill. 11.) A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service. (*Weis Paper Mill Co.* v. *Industrial Com. supra.*) In *Dietzen Co.* v. *Industrial Board,* 279 Ill. 11, an employee was held not entitled to compensation where the injury was received by him while reaching into an exhaust system to get a piece of metal which he had been polishing and which had fallen from his hands into the exhaust. The machinery upon which the employee was assigned to work was entirely separate from the exhaust system, which was in charge of another man, and the injured employee had been specifically instructed to have nothing to do with the exhaust system but to notify the person in charge of it in case anything went wrong. The sole duty of the injured employee was to take metal pieces and hold them against a buffing wheel until they were polished. It was held that in reaching into the exhaust system to get the piece of metal he was not engaged in any business of his employer or in anything connected with his employment, and therefore his injury was not one for which compensation was required.

310–5

Caroline Benham's injury was not received on the premises of her employer or while she was engaged in performing any duty of her employment or any act incidental to her employment.  She was not using the elevator for the purpose of going from or returning to her place of employment but merely for her own recreation.  It was about four minutes to four when the accident occurred.  The remark that she wanted to see what time it was suggested that she was sitting on the window sill for that purpose, but the door in the elevator was glass and the clock was plainly visible through the window.  She sat on the sill in a place of unnecessary danger.  It was not merely a case of contributory negligence, for the exposure to danger was not one which arose in any sense from her employment but was entirely aside from her employment.  The Industrial Commission properly held that the accident did not arise out of any risk connected with her employment and the circuit court properly quashed the writ of *certiorari*.  Its order will be affirmed.

*Order affirmed.*