(No. 27524.— )

KENSINGTON STEEL CORPORATION, Plaintiff in Error, *vs.*
THE INDUSTRIAL COMMISSION *et al.*—(ALFRED DALLA
VALLA, Defendant in Error.)

*Opinion filed January 18, 1944—Rehearing denied March 16, 1944.*

McKENNA & HARRIS, (JAMES J. McKENNA, and B. S.
QUIGLEY, of counsel,) all of Chicago, for plaintiff in error.

AUGUSTINE J. BOWE, WILLIAM J. BOWE, and JOHN D. CASEY, (BERNARD F. MARTIN, of counsel,) all of Chicago, for defendant in error.

Mr. JUSTICE FULTON delivered the opinion of the court:

This cause comes here on writ of error granted to review the judgment of the circuit court of Cook county confirming an award entered by the Industrial Commission to the defendant in error, Alfred Dalla Valla, for injuries received to his hand while in the employ of the plaintiff in error, Kensington Steel Corporation.

Dalla Valla began working for plaintiff in error on June 20, 1940, as a millwright helper and later became a truck driver. A millwright helper was an assistant to the millwright in the repair of machinery in case of breakdown. About a week before Dalla Valla was injured, one of the truck drivers in the plant desired to exchange work with him and become a millwright helper. Upon inquiring from his superiors, Dalla Valla was told that if it was all right with the other man who wanted to change, it was all right with the officials. Dalla Valla then worked as a truck driver, hauling sand to the loaders in the sand mill and from the sand mill to the mullors. These trucks were gas-powered and had a sort of bucket in front which held about 500 pounds of sand.

At the time of the injury, the defendant in error was working nights and had driven the truck until about 12 o'clock when he stopped 10 or 15 minutes for lunch. He resumed his trucking until approximately 2:00 A. M. when he went over to a stove to get warm and while there heard a speed mullor making a racket or clunking noise. He testified that this mill made a clunking noise when it started out, a sort of thump, and that this indicated to him that a rubber bumper inside had gotten loose and fallen to the bottom of the mill. He further testified that once before, as a millwright's helper, he had helped the millwright fix

that particular machine; that he had heard that noise before and, therefore, went over to the machine and told the operator that the bumper should be gotten out and fixed. The operator then shut the machine off and Dalla Valla pushed the button to make sure the machine was shut off. He testified that the operator of the machine had not finished making a batch of sand at the time the machine was shut off and that he heard the operator "cuss" and shut off the machine. Dalla Valla then opened the door and reached into the machine to get the rubber bumper out of the bottom. The machine was still coasting at the time and the hand of the defendant in error was seriously injured. It was impossible to see inside of the machine, same being entirely closed in. Dalla Valla further testified that he was told how to do his work by John Trumball and Maurice Langham, who were night and day foremen. Besides having worked on this particular machine, he had worked on other similar machines in the factory. He admitted not having repaired any of the machinery himself, but in each case assisted the millwright, who was responsible; that if anybody had trouble with the machine he would tell Dalla Valla who would in turn tell the millwright. He further admitted that, at the time of the injury, being a truck driver, his work was of such a nature that he had nothing whatever to do with the repair of any machines, but when he was a millwright's helper he had assisted in working on this type of machine and, at the time of the injury, because of his previous experience, he thought he would go over to the machine and see what was the matter with it.

John Hovancek, who was operating the machine at the time of the injury, testified that he shut the machine off because he was through mixing a batch of sand; that when the machine started it made a jerking noise and at the time he shut it off it was not making any noise whatsoever and that nothing was wrong with it; that Alfred

Dalla Valla came over to him and told him something was wrong with the machine and something should be done about it; that Dalla Valla then told him something about the rubber part of the shaft which was all torn up and Hovancek told him that he had already reported it but that they had not had that particular part, at the time, for repair and further that it had nothing to do with the operation of the machine. He further said that the machine was operating perfectly in spite of the washer that was torn.

James Carter testified that he worked on the machine in the daytime and that nothing was wrong with it as far as he knew; that it did not make any particular noise except when it was stopping.

John M. Trumball, the master mechanic, testified that he supervised all mechanics and any repairs that were done; that he always sent a millwright or a machinist to do the repairs and that Dalla Valla, prior to becoming a truck driver, had been a millwright's helper; that whenever he worked on a machine defendant in error was under the supervision of a millwright or machinist and only did what he was told; that when Dalla Valla became a truck driver, he was out of Trumball's jurisdiction entirely; that he never authorized truck drivers to repair machines and that it was not customary for persons outside of his department to make repairs on a machine, nor had he ever authorized anyone not in his department to make repairs on machines. He admitted that Dalla Valla might have helped repair this particular machine, but that the particular washer involved was doing no harm and was not changed. When Trumball hired defendant in error he told him what he was supposed to do. Trumball further testified that the noise caused by the machine was as it picked up speed and had nothing to do with the operation of the machine, being merely the vibration of two speed wheels. He had never told Dalla Valla not to go near this particular machine.

The foreman of the truck department testified that no one in his department ever repaired machines. Ted Lesinski testified he looked at the machine immediately after the accident and saw the defendant in error's fingers in the machine and that nothing else was wrong with it.

Maurice Langham, the night-shift foreman, testified that he repaired machines with a helper and had Dalla Valla as a helper while he was in his department; that he instructed him what to do and that Dalla Valla did not do anything without his instructions; that he never let a helper do a job on a big machine without supervision. He admitted that a millwright helper did do certain things without the millwright and that he had not instructed Dalla Valla where the line was drawn as to what he could do and what he could not do and just assumed that a helper should not do a major job; that he had never instructed Dalla Valla not to touch any machine.

It is the contention of the plaintiff in error that Dalla Valla was merely curious and, without authority and against general orders and custom, left his job as a truck driver in the plant of the Kensington Steel Corporation to do something that was outside of the sphere of his present employment; that nothing in the record shows there was any emergency or any need of repair to the machine in question and that the fact that the machine was still running when he stuck his hand in the machine indicated a lack of capacity to handle or repair such a machine.

The theory of the defendant in error is that an employee, who, in an emergency, either real or apparent, acts on a sudden impulse to conserve the interest of his employer, does not depart from the course of his employment when the act performed was not forbidden by his superiors.

The facts in this case are largely in agreement. Dispute exists only as to whether or not the machine actually was in need of repair. Dalla Valla contends that the ma-

chine needed repair, whereas all of the other witnesses were of the opinion that the machine was in good working order in spite of the rubber washer that had fallen to the bottom of the machine. It is clear that the defendant in error knew from his past experience that if a machine was in need of repair, the millwright was to be notified and, according to his past practice, the millwright helper would help him make the repair. It is not clear who shut off the machine or whether the operator of the machine had finished making a batch of sand.

The question in this case is whether the injury to Dalla Valla arose out of and in the course of his employment. An injury must arise out of and in the course of the employment or it must be incident to the employment. The question as to whether or not an injury arises out of and in the course of the employment is one of fact. (*Landon* v. *Industrial Com.* 341 Ill. 51.) It is the province of the Industrial Commission to draw reasonable inferences and conclusions from the evidentiary facts, and the findings of the commission upon questions of fact will not be set aside by this court unless they are manifestly against the weight of the evidence. *Landon* v. *Industrial Com.* 341 Ill. 51; *Joyce-Watkins Co.* v. *Industrial Com.* 325 Ill. 378; *Atlas Linen Supply Co.* v. *Industrial Com.* 348 Ill. 69.

Where facts are not in dispute, their legal effect becomes a matter of law and the rule as to the power of the court to set aside the decision only when it was made against the manifest weight of the evidence has no application, and upon questions of law this court is not bound by the decision of the Industrial Commission. *Puttkammer* v. *Industrial Com.* 371 Ill. 497; *Northwestern Yeast Co.* v. *Industrial Com.* 378 Ill. 195.

It has long been established in Illinois that an injury, to be compensable, must be one resulting from a risk reasonably incident to the employment, that is, a risk which belongs to or is connected with what a workman has to

do in fulfilling his contract of service. If the workman incurs an injury due to a risk not incident to his employment but through doing an act of his own choosing outside any reasonable exercise of employment, such injury does not arise out of his employment. *Northwestern Yeast Co.* v. *Industrial Com.* 378 Ill. 195; *Boorde* v. *Industrial Com.* 310 Ill. 62.

In the case of *Imperial Brass Mfg. Co.* v. *Industrial Com.* 306 Ill. 11, where a janitor suffered injuries from using sulphuric acid in his cleaning work when he had been forbidden the use of the acid, a recovery was not denied to him, on the ground that the failure to obey such an order did not remove him from the sphere of his employment but merely constituted negligence; that when he was injured he was within the scope and sphere of his employment.

In *Long* v. *Industrial Com.* 347 Ill. 250, the injured employee was a coal miner loading cars and when a car became filled and no one was present to move the car, he attempted to move the car and was injured. There was testimony that the employee had definitely been told not to attempt to move any loaded cars. However, the employee was corroborated by five other witnesses that the employee and others had in the past moved cars while the boss was present and without objection. There an award for the employee was affirmed on the ground that this court could not weigh the evidence and could not say that the finding of the commission was against the weight of the evidence.

The case of *Brooks Tomato Products Co.* v. *Industrial Com.* 311 Ill. 207, was a case where an employee, whose machine on the first floor of a plant became stalled, went upstairs on a freight elevator to ascertain why the machine had stopped, and was injured. There the employee admitted he had not been instructed to go to the second floor nor was it part of his duties to repair machinery or trouble

since he was inexperienced. It was admitted, however, that were he experienced in repairs, it would have been permissible for him to make an investigation and correct the difficulty. Since this was true, the court held that it cannot be said that the employee took himself out of the sphere of his employment when he followed a fellow workman to learn the cause of the interruption and to learn how to correct the difficulty and that in so doing he was promoting the interest of his employer. The court held that this conclusion was in harmony with the principles of law announced in *Dietzen Co.* v. *Industrial Board,* 279 Ill. 11, which is a leading case on the question in this State.

In *Puttkammer* v. *Industrial Com.* 371 Ill. 497, a truck driver, on returning to his employer's coal yard after delivering coal, came upon the scene of an accident, stopped his truck and while at the scene picked up an injured child and carried the child toward his truck. In so doing he was struck and killed when another car collided with the wreckage. It was held that his death arose out of and in the course of his employment as the act was in connection with the use of his truck in the street and was foreseeable and incidental to his employment as a truck driver, where he got out of the car to see whether he could pass the damaged automobile safely or to lend aid to the injured.

This court has heretofore held, in *Scholl* v. *Industrial Com.* 366 Ill. 588, that the Workmen's Compensation Act should receive a liberal construction, but that it is not alone sufficient that the injury be received in the course of the employment but that it must also arise within the duties of the employment or some act incidental thereto. This case recognizes the difficulty of establishing a fixed rule to apply to a particular case. It is apparent that each case must be decided upon its particular state of facts and the general rule applied thereto as closely as possible.

In *Great Atlantic and Pacific Tea Co.* v. *Industrial Com.* 347 Ill. 596, it was pointed out that certain rules

concern the conduct of the workman within the sphere of his employment, while others limit the sphere itself; that a transgression of the former class leaves the scope of the employment unchanged and will not prevent a recovery, while a transgression of the latter class carries the workman outside of the sphere of his employment and compensation will be denied. It was also said that a workman is not in the course of his employment, even though he may be in the general sphere of it, if he is not engaged in performing the particular duties for which he was employed or in some work incidental thereto.

In *Mepham & Co.* v. *Industrial Com.* 289 Ill. 484, where a belt on a machine had come off and millwrights had complete charge of any repairs and where the millwright was attempting to put the belt on and had asked the assistance of two workmen, a third employee, who was injured, volunteered his service and without request injected himself into the repair operation by taking a crowbar away from one of the workmen and attempted to get the belt off of a pulley when he was thrown to the ground and killed. The court held that here there was no emergency and that the deceased had volunteered his service and undertook to do that which he was not bound to do and that which he had not been in the habit of doing with his employer's knowledge and that which was not in pursuance of any interest of the master. That his undertaking was in the absence of any peril requiring him to act as on an emergency, and did not arise out of his employment.

The case of *Dietzen Co.* v. *Industrial Board,* 279 Ill. 11, involves a very similar situation to the one in the instant case. There the injured employee was employed to polish metal pieces and place the polished piece into a box. Under the machine was a boxlike receptacle into which dust fell from the work, under which an exhaust system was completely enclosed. While polishing a piece it fell into the

exhaust system. The employee reached in to get the piece out and received injuries. The exhaust system was separate from the buffing machine and there was testimony that the employee had several times been instructed not to attempt to take the cover off of the exhaust system; that his sole duty was to buff and that he had been so instructed and that several times when he had taken off the cover of the exhaust he had been instructed specifically not to do so. Repairs to machines were particularly segregated for millwrights and their helpers. It was said by the court that an accident only arises out of and in the course of the employment when it arises from doing or omitting to do some act within the sphere of the employment; that if an employee chooses to step outside of the sphere of the employment and to do something he is not expected to do or required to do, he does so at his own risk. It was further said that where an employee is injured in the performance of a service voluntarily undertaken, different from what he is supposed to do, the master is not liable, and that he must suffer the consequences if he voluntarily and without direction does hazardous work outside of his contract of hire without the master's acquiescence; that a volunteer is one who introduces himself into matters which do not concern him and undertakes to do something which he is not bound to do or which is not in pursuance or protection of any interest of the master, and which is undertaken in the absence of any peril requiring him to act as on an emergency. In that case, it was said there was no evidence that any emergency existed nor was there any evidence that there was any danger from the piece of metal left in the exhaust pipe and that it could not be said that there was an emergency under which the employee was acting upon a sudden impulse to protect the property of his employer; that the conclusion follows that the act of opening the exhaust pipe had no reasonable connection with his work so as to justify him in the conclusion that it was his duty to take off the

cover and recover the article; that proper organization of modern-day factories requires this work to be done by experienced and skillful mechanics and that if a workman who is not a part of a repair crew, where there is no emergency, of his own volition sees fit to intermeddle outside of his employment, he should not be allowed compensation upon the mere plea that he thought it would be for the benefit of his employer.

Under the principles announced in the *Mepham* and *Dietzen cases,* it seems impossible to allow a recovery for the employee in the instant case and, following the doctrine laid down in the *Dietzen case* strictly, this court is not bound by the legal conclusions of the Industrial Commission and, therefore, the award should be set aside. There appears to have been no customary interchange of work by the employees of the department in which Dalla Valla was employed. We are unable to see that any different rule than that announced in the *Dietzen case* should be applied in this case. Therefore, the order of the circuit court confirming the award is erroneous. The judgment of that court is reversed and the award set aside.

*Judgment reversed; award set aside.*