TOMAS CASIMIRO, a/k/a Alcadio Mendoza, *et al.*, Appellants, *v.* THE INDUSTRIAL COMMISSION *et al.* (Hinsdale Nurseries, Inc., Appellee).

First District (Industrial Commission Division)   No. 1—84—373WC

Opinion filed May 16, 1984.

Lewis & Davidson, Ltd., of Chicago (James J. Schneider, of counsel), for appellants.

Musschoot, Womack & Galich, of Chicago (Steven M. Selan, of counsel), for appellee.

JUSTICE WEBBER delivered the opinion of the court:

Petitioners Tomas and Felix Casimiro are brothers. They filed claims under the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*) for injuries sustained when they were assaulted and beaten on May 28, 1976, by fellow employees of respondent, Hinsdale Nurseries. Pursuant to stipulation, both of the claimants' cases were consolidated for hearing before an arbitrator. The arbitrator denied compensation to the claimants, holding that they had failed to prove that they had sustained injuries arising out of and in the course of their respective employment by respondent. On review, the Industrial Commission modified the decision of the arbitrator. It concluded that the injuries sustained by the claimants arose out of but not in the course of their employment. The circuit court affirmed the decision of the Commission. This appeal followed.

The relevant facts are not in dispute. The claimants themselves

were the only witnesses to testify. On May 28, 1976, the claimants were employed by the respondent nursery. They worked both inside the nursery and as landscapers at various job sites. On May 28, claimants were assigned to a work crew whose job it was to plant 3,000 trees. Felix was appointed crew boss. He had never held this position before. The usual boss was Hector Contrares, but Felix was ordered to supervise because he had more experience planting trees. Felix' appointment as boss spurred resentment among other crew members. Contrares and another worker, Richardo Hernandez, taunted Felix and his brother and generally refused to acknowledge Felix' authority.

At the close of the workday, the crew was treated to beer by the man at whose place they had been working. Shortly after 6 p.m., the crew returned to the nursery. Once there, they went to their living quarters. Inside the nursery grounds, respondent maintained a house in which the nursery workers lived. Felix, while working for respondent, had lived in these quarters for 2½ years. Tomas, who was a new employee, had lived there for about two weeks. The quarters were rented to the workers at a nominal fee. Living at the nursery was optional with the workers; it served as a convenience to them.

Once back at the nursery, dinner was prepared and additional beer was drunk. The taunting of the claimants continued and an argument among the workers erupted at about 11 p.m. The claimants were severely injured when beaten with a pipe wielded by Contrares. Tomas was also injured by Hernandez, who clubbed him with a bar. There had previously been no serious disagreements among the members of the work crew. The claimants' uncontradicted testimony was that the combat was unprovoked and arose out of the dispute concerning Felix' appointment as boss.

The issue is whether the claimants suffered injuries arising out of and in the course of their employment. Where, as here, the facts are not in controversy, the question is one of law. (*Osborn v. Industrial Com.* (1971), 50 Ill. 2d 150, 277 N.E.2d 833.) The phrases "arising out of" and "in the course of employment" are used conjunctively. An injury "arises out of" one's employment if its origin is in some risk connected with or incidental to the employment so that there is a causal connection between the employment and the accidental injury. (*Material Service Corp. v. Industrial Com.* (1973), 53 Ill. 2d 429, 292 N.E.2d 367.) The phrase "in the course of" relates to the time, place, and circumstances under which the accident takes place. (*Loyola University v. Industrial Com.* (1951), 408 Ill. 139, 96 N.E.2d 509.) No precise rule can be established to determine when an injury arises in the course of employment. However, again, a causal relation-

ship between employment and the injury is required. *Union Starch v. Industrial Com.* (1974), 56 Ill. 2d 272, 309 N.E.2d 557.

In this case, the Industrial Commission found that a causal connection existed between the dispute over Felix' status as boss and the assault which resulted in the claimants' injuries. Thus, it held that the injuries arose out of their employment. The Commission concluded, however, presumably because the injuries occurred after work hours and in a place that the claimants' employment did not require them to be, that the injuries did not arise in the course of their employment.

The claimants, relying principally upon *Technical Tape Corp. v. Industrial Com.* (1974), 58 Ill. 2d 226, 317 N.E.2d 515, and *Scholl v. Industrial Com.* (1937), 366 Ill. 588, 10 N.E.2d 360, urge that the latter finding was in error. They contend that the origin of the injuries was a work dispute and that they are entitled to compensation. We disagree.

In *Scholl*, the decedent, Scholl, had worked for his employer as a foreman. A man named Greene worked under his direction and was eventually discharged by Scholl. Greene reapplied for work but was told by the employer that his reemployment was dependent upon Scholl's approval. Greene, on one occasion, went to Scholl's home to talk to him about getting a job. He left the house shaking his fist at Scholl. Two days later Greene met Scholl a short distance from Scholl's home en route to the work factory. Greene invited Scholl into his car, hoping to force Scholl to put him back to work. Greene was armed with a gun and shot and killed Scholl while still a number of blocks from work. Scholl's death was held, as a matter of law, to have arisen out of and in the course of his employment.

Claimants urge that *Scholl* supports their contention that injuries resulting from an assault by a fellow employee outside of the work premises are compensable if the dispute originated at work. The holding of *Scholl*, however, is much narrower. The court stated:

> "The point is not so much where or when the shooting actually occurred as it is that, at that particular time Scholl, by reason of his employment, and in the performance of a duty arising therefrom, was subjected to an unforeseen risk which brought about his death." *Scholl v. Industrial Com.* (1937), 366 Ill. 588, 595, 10 N.E.2d 360.

Thus, it is apparent that the court regarded as significant the fact that Scholl's employer had specifically directed Greene to contact Scholl for the purpose of obtaining reemployment. The court concluded that the incident occurred in the course of employment since at the time of the assault, although not specifically at the place of em-

ployment, the employee was doing work connected with or incidental to his employment.

In this case, the claimants' work obligations to respondent ended with the work day. It cannot be said that at the time of the assault the claimants were performing a duty connected with or incidental to their employment.

The claimants' reliance upon *Technical Tape Corp.* is also misplaced. In that case, the claimant was employed on a night shift. He was told to clean the residue from a glue churn. The ingredients of the glue included toluene, resins, and rubber. When the claimant had finished his task, he felt a burning sensation in his feet and legs and also felt nauseated and dizzy. At the completion of his shift, some 15 minutes later, he drove his car erratically for about five miles and then ran a stop sign and collided with another car. The arbitrator awarded the claimant compensation for his injuries. The employer filed a petition for review with the Commission. A physician who had examined the claimant shortly after the accident stated that it was obvious that he had been exposed to a large amount of toluene. This, he said, could cause dizziness and a feeling of intoxication. The Commission, the circuit court, and the supreme court confirmed the award. The supreme court concluded that the evidence showed that the claimant's intoxication was the result of his cleaning the churn and that the injuries sustained in the collision had their origin in the intoxication.

■■ ■ Here, although there was a causal connection between the dispute concerning Felix' appointment as boss and the claimants' injuries, we conclude that the injuries did not have their origin in the dispute. An accident may fairly be said to arise "in the course of" the employment if it was the end product of a force or cause set in motion in the course of employment. In this case, the ultimate cause of the claimants' injuries was the blows delivered by their assailants. Because, in this case, and unlike in *Technical Tape Corp.*, there is an absence of some measurable act or force occurring while the employee was performing work connected with or incidental to his employment, the injuries, in a traditional sense, did not have their origin in or arise out of the claimants' employment.

We are aware that other jurisdictions have approved of compensation to an employee assaulted while not on duty but as the aftermath of resentment incurred in the performance of duty. In *Thornton v. Chamberlain Manufacturing Corp.* (1973), 62 N.J. 235, 300 A.2d 146, the claimant reprimanded an employee for repeated failure to wear safety glasses. Some nine days after claimant had terminated his em-

ployment he saw the employee at a bar and, as he left, was attacked by the employee. It was held that the employee's injuries were sustained while in the course of employment, and he was entitled to workmen's compensation benefits.

In *Graybeal v. Board of Supervisors* (1975), 216 Va. 77, 216 S.E.2d 52, the claimant, a prosecutor, was injured when a bomb exploded at his home. The bomb had been planted by an individual whom the attorney had prosecuted for murder several years previously. It was held that the claimant's injuries arose in the course of his employment because the chain of events from prosecution to desire for revenge to injury was unbroken. See also *State Compensation Insurance Fund v. Workers' Compensation Appeals Board* (1981), 120 Cal. App. 3d 123, 174 Cal. Rptr. 447; *Bearshield v. City of Gregory* (S.D. 1979), 278 N.W.2d 166.

We do not find these authorities persuasive. In our opinion they proceed on what may be called a "relation-back" theory; that is, first to determine the injury and then retrocede to the alleged cause. The *Technical Tape Corp.* rationale is sounder in that it involves a "relation-forward" theory; that is, an injury occurs in the work place, but manifests itself at a later time and outside the work place without an intervening cause.

In the instant case we are of the opinion that the harsh words and taunting during the working hours are not a sufficient injury to set in motion a measurable act or force which resulted in the ultimate injury which is the subject of the claim.

Accordingly, we agree with the circuit court and with the Commission that the claimants' injuries did not occur in the course of their employment. The judgment of the circuit court is therefore affirmed.

Affirmed.

SEIDENFELD, P.J., McNAMARA, BARRY, and KASSERMAN, JJ., concur.