Bruce M. Schoenbein, an Incompetent Person, by Russell E. Schoenbein, His Conservator, Plaintiff-Appellee, v. Board of Trustees of the Police Pension Fund of the Village of Morton, Illinois, and Walter R. Strunk, et al., Defendants-Appellants.

Gen. No. 64–52.

Third District.

December 13, 1965.

[black redaction blocks]

Stanley W. Crutcher, of Peoria (Conrad Noll, Jr., of Springfield, of counsel), for appellants.

McConnell, Kennedy, McConnell & Morris, of Peoria (Thos. B. Kennedy, Sr., of counsel), for appellee.

STOUDER, J.

This is an appeal from a judgment of the Circuit Court of Tazewell County reversing an order of the Board of Trustees of the Police Pension Fund of the Village of Morton.

The Conservator of the estate of Bruce Schoenbein, incompetent, hereinafter referred to as Appellee, commenced this action by filing a petition for a pension with the Board of Trustees of the Police Pension Fund of the Village of Morton, hereinafter referred to as Appellant. The facts as shown by the petition and evidence are not in dispute. Likewise no question of procedure is involved.

Appellee was appointed policeman by the Village of Morton in 1956 and served as such until December, 1962.

In 1960 the Village of Morton by ordinance provided for a "Police Pension Fund System" as authorized by statute. All policemen then employed became entitled to participate in the pension program regardless of age at first appointment and regardless of physical condition. Appellee being a policeman at the time of the adoption of the ordinance became entitled to its benefits without examination or further qualification. Appellee made regular contributions to the pension fund until March, 1963. In December, 1962 Appellee, by reason of mental illness, was unable to perform his duties as a policeman. Thereafter in January, 1963, he was committed to a state hospital for treatment. A Conservator of his person and estate was duly appointed in February, 1963. Appellee was released from the state hospital on March 7, 1963. The Village of Morton paid Appellee his regular salary until March 15, 1963, after which time it refused so to do. On June 10, 1963, Appellee filed his petition for pension and a hearing was held thereon in September, 1963. The evidence of four witnesses was considered by the Board in behalf of Appellee. Three of the witnesses were doctors and they each testified that Appellee was mentally ill to the extent that he was incompetent to perform his duties as a policeman. No evidence was presented concerning any other condition affecting Appellee's state of health. The fourth witness, the Appellee's brother and Conservator, testified that Appellee had been gainfully employed as a hod carrier and farm laborer since his release from the hospital on March 7, 1963, until the time of the hearing, the doctors at the hospital having recommended physical labor as treatment for Appellee's mental illness. At the conclusion of the hearing the Board found that Appellee had failed to prove that he was "physically disabled" as required by statute and denied his claim for a pension.

Appellee filed a complaint in the Circuit Court of Tazewell County under the provisions of the Adminis-

trative Review Act seeking to reverse the order of the Board. The Court, after reviewing the record, found that Appellee was not mentally fit to perform the duties of a policeman and therefore became physically disabled to an extent necessitating his suspension from the police force. The Court thereupon reversed the order of the Board and granted Appellee's pension and it is from this judgment that Appellant appeals.

Appellant in seeking to reverse the decision of the Court below contends that the Court erroneously interpreted the statutory requirement that a policeman be "physically disabled" in order to be entitled to a pension under section 10–8–7, Chapter 24, Illinois Revised Statutes 1961, which is as follows; "Whenever any member of a regularly constituted police force in any such city, village or incorporated town, becomes physically disabled to such an extent as to necessitate the suspending of performance of his duty on such police force, or retirement from the police force, he shall be paid from the fund a pension of one-half of the salary attached to the rank he held on the police force for one year immediately prior to the time of his so suspending performance of his duty or retirement. Whenever such disability ceases and the policeman resumes the performance of his duty on the police force such pension shall cease. If the disability continues for a period of time which, if added to the period of his active service equals 20 years, the policeman shall, if he is then of the age of 50 years, if he elects to then retire from said police force, be paid a regular pension in lieu of such disability pension." Appellant contends that this provision is clear and unambiguous and does not include a policeman who is "mentally unfit" or "mentally disabled."

█ The sole question before us is what meaning shall be ascribed to the phrase "physically disabled." The facts not being in dispute, their legal effect becomes a matter of law and the rule as to the power of the Court

to set aside the decision only when it was made against the manifest weight of the evidence has no application. Kensington Steel Corp. v. Industrial Commission, 385 Ill 504, 509, 53 NE2d 395.

We have had provisions dealing with police pension funds for many years. The Act of 1909 provided that a policeman was entitled to a pension when he ". . . became physically disabled in and in consequence of his duties. . . ." The legislature again had occasion to consider police pension plans in 1943 when it broadened the scope of the provision by eliminating the requirement that the physical disability be service connected namely by eliminating the phrase "in and in consequence of his duties."

■ In determining the meaning of a statute a primary rule of construction is that words are to be given their plain ordinary meaning. Where the legislature has expressed itself in clear unambiguous language the plain meaning of the words so employed cannot be disregarded.

Dictionaries define "physical" as "of or pertaining to the body" and "mental" as "of or pertaining to the mind," the words are therefore words of distinction or opposition. The words physical or mental are used in ordinary language to refer to distinct and different parts or aspects of a person. The language of the witnesses for Appellee is of especial pertinence in this respect. Dr. Ledien stated, "No physical examination was done, as patient had no physical complaints . . . and the purpose of the examination was to evaluate his mental condition" and concluded "Schizophrenic Reaction, Paranoid, which makes him unfit to stay on the police force." Dr. Turow stated, "The psychiatric examination reveals positive findings of paranoid projection mechanisms, suspiciousness, anxiety and apprehensiveness, flattening of affect and paranoid delusional ideas" that ". . . Because of the presence of a paranoid mental illness, this applicant can not meet the responsibilities and the requirements of good

judgment necessary in the execution of any position in the Police Department" and concluded with the diagnosis that "It is my firm opinion that Bruce M. Schoenbein is mentally disabled and is not competent to perform duty with the Police Force of the Village of Morton, Illinois." Dr. Maran stated, "No physical complaints were offered. Partial physical examination revealed normal heart and lungs. Regarding his psychiatric condition, there is still evasiveness, guardedness, in association with suspiciousness and vague ideas of persecution. His general physical condition is entirely satisfactory. This is not the case of physical disability but that of a mental disability." Russell Schoenbein, brother of the policeman, testified on cross-examination that his brother has in no way evidenced any physical impairment in the nature of a broken leg, arm or other physical disability. Russell Schoenbein also testified that the state hospital had recommended physical labor as therapy. Each of the foregoing witnesses by their language recognized the distinction and differences between "physical disability" and "mental disability" and each concluded that Appellant was not "physically disabled" and was not physically impaired.

 Appellee in support of his claim for pension contends that even though a condition of "mental unfitness" may be different from a condition of "physical disability" nevertheless "mental unfitness" is within the spirit and intent of the statute. He argues that the use of the word "disability" alone in the portions of the statute following the phrase "whenever a policeman shall become physically disabled" evidences the intent of the legislature to include all disabilities. However the oft repeated and well established rule of statutory construction of ejusdem generis does not support this contention. Where general words follow particular and specific words in a statute, the general words must be construed to include only things of the same kind as those indicated

by the particular and specific words. City of Chicago v. Ross, 257 Ill 76, 100 NE 159. The use of the word "disability" cannot enlarge the term "physically disabled." For the same reason we do not believe the cases referred to our attention by Appellee construing the word "disability" support his contention. None of these cases construe "physical disability" as including a "mental disability." Appellee also urges that section 10–8–2, chapter 24, Illinois Revised Statutes 1961, which provides that a policeman must be found to be "physically and mentally fit" in order to be eligible to participate in the pension fund is of significance in determining the intent of the legislature. While this eligibility requirement does evidence an awareness by the legislature of the importance of a policeman's physical and mental fitness it also demonstrates an awareness by the legislature of a distinction or difference in the meaning of the words "physically" and "mentally." Being aware of the distinction it cannot be said that the legislature intended anything different than what it said. Finally Appellee argues that the legislature, by an Act approved in March 1963, effective July 1, 1963, codifying existing pension statutes intended to make uniform disability standards. With this contention we cannot agree. Section 1–102, Chapter 108½, "The Illinois Pension Act" states that the Act is a reenactment of existing pension laws and shall not be considered a new Act. Likewise, Chapter 108½ individualizes each of the many pension plans which it encompasses and retains a variety of standards as associated with each pension plan. Both parties concede that section 10–8–7, Chapter 24, Illinois Revised Statutes 1961, is substantially the same as section 3–114, Chapter 108½, Illinois Revised Statutes 1963, and it was therefore appropriate that the case be considered under the latter section.

■■■ The provisions of a Police Pension Act are necessarily the function of the legislature. It is not within the

province of the courts to determine what the legislature might have done or should have done, but only what it has done.

 It is our conclusion that the legislature has expressed itself clearly and unambiguously in requiring that a policeman become "physically disabled" before he is entitled to a pension. We find nothing in the letter, spirit or intent of the statutes applicable to or supporting Appellee's contentions. Appellee has failed to prove that he was physically disabled and accordingly the order of the Trustees of the Police Pension Fund of the Village of Morton denying Appellee's pension was correct and should have been sustained by the Court below. Finding error in the judgment of the Circuit Court of Tazewell County the judgment is reversed.

Judgment reversed.

ALLOY, P. J., concurs.

CORYN, J., dissenting:
I do not agree with the majority opinion in this case, as I am of the opinion that their interpretation of the words "physical disability" as used in the Police Pension Fund Act, Ch 24, § 10–8–7, Ill Rev Stat 1961, is too narrow and not within the spirit and intent of said statute. Some emphasis has been placed on dictionary definitions of these words in the majority opinion. The correct definition, in my opinion, is to be found in Black's Law Dictionary, Fourth Edition, on page 548, which states: "A physical disability is a disability or incapacity caused by physical defect or infirmity, or mental weakness or alienation. . . ." This definition recognizes that the human mind, limbs, organs, etc., are all parts of the whole, that is, the body, and that physical disability means impairment of any part of the body. That this broader definition of the term "physical disability" was

intended by the legislature is even more evident when we consider that mental incapacity often results from illness or injury to parts of the body other than the brain. "Statutes granting pensions to public officers, including veterans, policemen, firemen and other public employees, were enacted to stimulate governmental efficiency by encouraging continued and loyal public service, and as a reward for the hardships and hazards suffered by the soldiers in our armies. Although this type of legislation constitutes a form of public grant, nevertheless it has as its purpose the promotion of the general welfare, and for that reason pension statutes are liberally construed to accomplish their objectives. Thus in determining the beneficiaries entitled to pensions, qualifications of the pensioner, and the time of service required for obtaining a pension, the courts should not resort to technicalities. . . ." Sutherland Statutory Construction (3rd Edition) Volume 3, § 7209. In my opinion, mental illness or injury, and resulting disability, is within the meaning and intent of that section of the Police Pension Fund Act providing for disability benefits to a policeman who is "physically disabled to such an extent as to necessitate the suspending of performance of his duty on such police force." The order of the Circuit Court of Tazewell County granting the plaintiff a disability pension should be affirmed.