*In re* MARRIAGE OF BARBARA L. ADAMS, Petitioner-Appellant, and CARL VICTOR ADAMS, Respondent-Appellee.

Fourth District   No. 4—88—0661

Opinion filed May 11, 1989.

Gary J. Stokes, of Georgetown, for appellant.

William B. McNamara, of Groppi, McNamara & Underhill, of Danville, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

The circuit court granted a dissolution of the parties' marriage on October 2, 1987. On June 7, 1988, the circuit court entered a supplemental order in which it found the dissipation of assets alleged by petitioner, Barbara Adams, was not supported by the evidence. Petitioner alleged respondent misspent a portion of his wages on a weekly basis. The court found respondent, Carl Adams, was not obligated to keep a weekly record of how income from employment was spent. The circuit court also did not find that any improvements made to nonmarital property were in issue because petitioner did not present any evidence as to appreciation of respondent's nonmarital property by virtue of the improvements. Petitioner appeals from the circuit court's supplemental order.

Petitioner and respondent were married on June 8, 1985. The marriage was dissolved on October 2, 1987. The parties lived together for approximately two years before they were married. A child of Barbara's from a previous marriage lived with the couple for at least a portion of their marriage. During the course of the marriage, according to Carl, his weekly take-home pay was approximately $417.

Barbara testified she knew both before the marriage and at the beginning of the marriage that Carl drank. Barbara stated for approximately one year before their marriage and approximately three to six months after their marriage, Carl did not visit taverns. According to Carl, for approximately one year prior to their marriage he and Barbara visited bars once every month or two and he went without her "all the time," then stopped when they were married. Carl said he visited bars only infrequently during the first year of the marriage. Barbara testified that when Carl began frequenting bars during their marriage, he would go every day directly from work at approximately 3:30 p.m., and would not return home until 9:30 p.m. or later. She said Carl also visited bars on weekends, arriving in the morning and staying until closing the next morning. Carl did not dispute this testimony.

Carl and Barbara were separated on three different occasions during the marriage, according to Barbara. Barbara could not remember when they separated first, but did say she had left for one month. Barbara said she again left Carl on a second occasion, for two or three months. Finally, Barbara left Carl in July 1987 on a third occasion and did not return.

The following is a breakdown of Carl's net income and expenditures during the two years and four months of the marriage:

Respondent's net income:　　approximately $50,040

Respondent's expenditures:　　approximately $450/month for the following: house mortgage payment ($190), electricity, telephone, water, sewer, gas, cable television, garbage collection

$4/week for credit union account

$400/year for real estate taxes

Over $100/year for homeowner's insurance

$70/week in child support

$2,000 for a trip to Las Vegas with petitioner

$2,500 for a trip to Hawaii with petitioner

$300 to 400 for a trip to Florida without petitioner

$400 for purchase of a pickup truck

$1,200 for house windows
$1,000 to $2,000 for addition to basement of house

Respondent's expenditures total at least $43,954. Respondent said the couple deposited $2,000 in an individual retirement account but the record does not indicate whether one spouse or both contributed to it. Respondent stated the remainder of his income, $4,986 to $6,086, was used for "this and that." In clarification, respondent said: "Well, there's cigarettes, beer, tips." Respondent later testified: "There's always something that comes up that takes your money. I got attorney fees, I got child support, different things."

Barbara was employed throughout the marriage, earning a net income of approximately $110 a week. Barbara also received $82 a week in child support. Among some of her expenditures, Barbara claims the following amounts were spent during the marriage: $1,200 for new windows for Carl's house, the amount Carl claims he spent on new windows; $400 or $500 for siding on the house; $1,200 for a patio for

the house; the cost to paint the garage, which was not given; and $1,350 for paneling and wallpaper in the bedroom and wallpaper in the kitchen. Barbara never claimed she paid for these items except the paint for the garage; she merely stated these amounts were spent during the marriage. Finally, Barbara spent approximately $60 to $65 a week for groceries during the marriage.

The trial court's supplemental order stated the court did not find dissipation of marital assets by Carl under section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1987, ch. 40, par. 503(d)) and did not allow reimbursement for any contributions to Carl's nonmarital estate under section 503(c)(2) of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 503(c)(2)). On June 21, 1988, Barbara filed a motion for reconsideration. On August 22, 1988, the circuit court issued its order which denied Barbara's motion for reconsideration. Barbara filed timely notice of appeal on September 7, 1988.

■ In dividing property subsequent to dissolution proceedings, the trial court's distribution will not be disturbed unless it abused its discretion. (*In re Marriage of Zummo* (1988), 167 Ill. App. 3d 566, 575, 521 N.E.2d 621, 626-27.) To determine whether the trial court abused its discretion, the reviewing court must ask "whether the trial court acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason and ignored recognized principles of law so that substantial injustice resulted." (*In re Marriage of Stone* (1987), 155 Ill. App. 3d 62, 75, 507 N.E.2d 900, 908.) Likewise, whether there was dissipation is a question of whether the trial court abused its discretion, and a finding concerning dissipation is an abuse of discretion if it is against the manifest weight of the evidence. *In re Marriage of Ryman* (1988), 172 Ill. App. 3d 599, 608, 527 N.E.2d 18, 24.

Petitioner claims the question on appeal is purely one of law. In support of her contention, petitioner cites *Kensington Steel Corp. v. Industrial Comm'n* (1944), 385 Ill. 504, 509, 53 N.E.2d 395, 397, where our supreme court found where facts are not in dispute, their legal effect becomes a matter of law and the rule that the reviewing court may set aside the trial court's decision only if it was against the manifest weight of the evidence does not apply. In *Kensington*, the court said the only question was whether the injury the plaintiff sustained arose out of and in the course of his employment, which is a question of fact.

Petitioner also cites *Schoenbein v. Board of Trustees* (1965), 65 Ill. App. 2d 379, 383, 212 N.E.2d 380, 381-82, which stated the *Kensington* rule. In *Schoenbein*, the court found the only question on appeal

was the meaning of the phrase "physically disabled" as used in section 10—8—7 of the Illinois Municipal Code (Ill. Rev. Stat. 1961, ch. 24, par. 10—8—7). While the determination of whether there was a proper finding in the trial court concerning dissipation involves an analysis of the facts of the case, the applicable standard of review on that issue is whether the trial court abused its discretion. Because the issue concerning contribution involves statutory interpretation, that issue is a question of law, the abuse of discretion standard does not apply, and we will conduct a *de novo* review of section 503(c) of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 503(c)).

We turn now to the question of whether the trial court abused its discretion by not finding dissipation of marital assets. Section 503(d) of the Act provides in pertinent part:

"In a proceeding for dissolution of marriage or declaration of invalidity of marriage, *** the court shall assign each spouse's non-marital property to that spouse. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors, including:

(1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit." Ill. Rev. Stat. 1987, ch. 40, par. 503(d).

■ It is well settled that dissipation occurs where one spouse uses marital property for his or her own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown. (*Ryman*, 172 Ill. App. 3d at 608, 527 N.E.2d at 24.) Whether a given course of conduct constitutes dissipation depends upon the facts of the individual case. (*In re Marriage of Drummond* (1987), 156 Ill. App. 3d 672, 683, 509 N.E.2d 707, 715.) The explanation given by the spouse charged with dissipation as to how funds were spent requires the trial court to determine his or her credibility. *In re Marriage of Lord* (1984), 125 Ill. App. 3d 1, 6, 465 N.E.2d 151, 154.

■ The spouse charged with dissipation of marital funds has the burden of showing, by clear and specific evidence, how the funds were spent. (*In re Marriage of Petrovich* (1987), 154 Ill. App. 3d 881, 886, 507 N.E.2d 207, 210.) Likewise, in *In re Marriage of Smith* (1984), 128 Ill. App. 3d 1017, 1021, 471 N.E.2d 1008, 1013, the court found if expenditures are not documented adequately by the person charged with dissipation, courts generally affirm a finding of dissipation. Furthermore, general and vague statements that funds were spent on marital expenses or to pay bills are inadequate to avoid a finding of dissipa-

tion. (*Petrovich*, 154 Ill. App. 3d at 886, 507 N.E.2d at 210.) In *Petrovich*, the petitioner gave her husband over $360,000 during the course of their marriage for him to invest. The investments produced $2 million, but soon only $15,000 remained. The husband testified he used some of the funds to pay off certain loans and the mortgage on the marital residence, but he offered no evidence to support his testimony. Furthermore, the husband was unable to explain the losses and could not testify to what stock he invested most of the money in. The court affirmed the trial court's finding that the funds were dissipated. *Petrovich*, 154 Ill. App. 3d at 886-87, 507 N.E.2d at 210.

In *Smith*, much like *Petrovich*, but unlike the case at bar, the husband could not recall which bills he paid, only that he paid bills. The court affirmed the trial court's finding that the husband had spent funds improperly and had not accounted for all funds sufficiently. (*Smith*, 128 Ill. App. 3d at 1022, 471 N.E.2d at 1014.) In *In re Marriage of Partyka* (1987), 158 Ill. App. 3d 545, 550-51, 511 N.E.2d 676, 680-81, the husband received a $14,000 check from his former employer and testified he paid many bills with it but did not know specifically what he did with the check. He also stated he may have deposited funds from the check into a savings account, or that he could have deposited the funds in two other accounts, and part of the check went toward the purchase of a horse for his children. The court found no clear and specific evidence of how the check was spent and affirmed the trial court's finding of dissipation. Furthermore, the husband testified $5,000 of another $14,000 check was used to " 'live on and pay the bills,' " and $3,500 of the check was used " 'to keep the marital home going.' " The court affirmed the trial court's finding of dissipation. *Partyka*, 158 Ill. App. 3d at 551-52, 511 N.E.2d at 681.

■ The case at bar differs from *Petrovich*, *Smith*, and *Partyka* in two respects. First, we do not have a finding of dissipation, which the *Smith* court found is generally affirmed absent adequate documentation. Indeed, the documentation here accounts adequately for a vast majority of Carl's income during the marriage. More importantly, when Carl said his income went to pay bills, he was able to provide a breakdown of monetary figures and specific bills which were paid, unlike the facts in the cases cited.

Petitioner argues the finding in *In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 462-64, 426 N.E.2d 1087, 1094-96, where the court affirmed the trial court's finding of dissipation. Although the appellate court found approximately $270,000 of the $415,545 determined dissipated by the trial court was not dissipated, it affirmed the trial court's award of $50,000 to the wife for the amount the husband

dissipated. However, this dissipation occurred after the wife consulted an attorney concerning marital problems and informed the husband of her action. As the court stated in *Drummond*, funds may be found to have been dissipated only when spent after the marriage is undergoing an irreconcilable breakdown. *Drummond*, 156 Ill. App. 3d at 683, 509 N.E.2d at 715.

In *In re Marriage of Aud* (1986), 142 Ill. App. 3d 320, 331, 491 N.E.2d 894, 901, the court found where the husband continued a practice after the marriage had broken down that he had done before the marital breakdown, the use of marital funds for the care of his mother, and his wife did not object to the expenditures when made both before and after the marital breakdown, there was no dissipation of marital funds. Furthermore, in *Drummond*, we did not find dissipation and in so holding looked at several factors: the money was spent during the marriage but prior to the indication of marital discord; there was no evidence of wilful dissipation; and the husband spent the money on commodities investments in hopes of obtaining a profit. *Drummond*, 156 Ill. App. 3d at 683-84, 509 N.E.2d at 715.

In the case at bar, we do not know exactly when the marital breakdown began. However, Barbara claims Carl began frequenting bars within three to six months after their marriage began. Carl stated this occurred approximately one year after their marriage. Whenever Carl began frequenting bars, it seems that was when the marital breakdown began. However, Barbara seems to claim that Carl dissipated funds throughout their marriage; she does not limit it to any time period during the marriage. Significantly, there is no evidence in the record that Barbara objected to Carl's frequent journeys to taverns, although the record indicates she did not agree with the visits.

Because we cannot speculate but must rely on the record, we find the trial court did not abuse its discretion here where only $4,986 to $6,086, although Barbara claims the figure is over $16,000, of Carl's net income during the marriage which lasted two years and four months was entirely unaccounted for; indeed, Carl did state that amount was spent on cigarettes, beer, and tips. While some factual situations justify a requirement that a wage earner account for his or her income, as in *Smith*, we conclude the evidence in the record and the small amount of funds alleged to be dissipated over a period of at least 16 months cannot justify a finding of dissipation.

We turn now to the question of whether the trial court should have considered the contributions made to respondent's nonmarital estate in the division of the marital property. Section 503(c)(2) of the Act provides:

"(c) Commingled marital and non-marital property shall be treated in the following manner, unless otherwise agreed by the spouses:

\* \* \*

(2) When one estate of property makes a contribution to another estate of property, or when a spouse contributes personal effort to non-marital property, the contributing estate shall be reimbursed from the estate receiving the contribution notwithstanding any transmutation; provided, that no such reimbursement shall be made with respect to a contribution which is not retraceable by clear and convincing evidence, or was a gift, or, in the case of a contribution of personal effort of a spouse to non-marital property, unless the effort is significant and results in substantial appreciation of the non-marital property. Personal effort of a spouse shall be deemed a contribution by the marital estate. The court may provide for reimbursement out of the marital property to be divided or by imposing a lien against the non-marital property which received the contribution." Ill. Rev. Stat. 1987, ch. 40, par. 503(c)(2).

Barbara claims contributions in the form of improvements totalling $5,250 were made to Carl's nonmarital estate, his house, during the marriage. The trial court found the improvements to Carl's house may constitute contribution to nonmarital property, but the improvements were not an issue in the case because no evidence was presented as to appreciation in value to the nonmarital estate by virtue of the improvements that were made. Barbara claims the trial court misread section 503(c)(2); Barbara claims appreciation in value to the nonmarital estate must be shown only if the contribution is of personal effort. Barbara argues section 503(c)(2) entitles the contributing estate to reimbursement if the contribution can be retraced by clear and convincing evidence. We agree.

Barbara's claim to contribution raises a question of transmutation. Transmutation is based on the presumption that when the owner of nonmarital property contributes the property to the marital estate, he or she intends to make a gift of the property to the marital estate. (*In re Marriage of Olson* (1983), 96 Ill. 2d 432, 439, 451 N.E.2d 825, 828.) Transmutation can occur when marital funds are spent to preserve or repair nonmarital assets. *In re Marriage of Holman* (1984), 122 Ill. App. 3d 1001, 1006, 462 N.E.2d 30, 34.

Section 503(c)(1) provides that when marital funds are contributed to nonmarital property, the nonmarital property retains its classification and the marital funds are transmuted to nonmarital property. (Ill.

Rev. Stat. 1987, ch. 40, par. 503(c)(1); *In re Marriage of Thornton* (1985), 138 Ill. App. 3d 906, 918, 486 N.E.2d 1288, 1296.) To compensate for transmuted contributions, the contributing estate shall be reimbursed from the estate receiving the contribution, notwithstanding any transmutation. (Ill. Rev. Stat. 1987, ch. 40, par. 503(c)(2); *Thornton*, 138 Ill. App. 3d at 918, 486 N.E.2d 1296.) Reimbursement is made to the contributing estate, not to the contributing spouse. *In re Marriage of Morse* (1986), 143 Ill. App. 3d 849, 855, 493 N.E.2d 1088, 1092.

In the case before us, Barbara claims improvements were made to Carl's house during the marriage. The improvements Barbara claims, in her brief, were made to Carl's house are: $1,700 for new windows and siding; $1,200 for a new patio; $1,350 for paneling and wallpaper for the bedroom and kitchen; and $1,000 to $2,000 for an addition to the basement. Barbara thus claims Carl's house received $5,250 in marital contributions. Barbara claims she should be reimbursed the entire value of those contributions. During her testimony at the hearing Barbara claimed only $4,150 or $4,250, the improvements claimed in her brief except the addition to the basement.

■ The trial court did not consider the improvements because no evidence was presented to the court as to what, if any, appreciation accrued to the nonmarital house by virtue of the improvements that were made. We agree that section 503(c)(2) limits required evidence of appreciation of the nonmarital property to contributions of personal effort. See, *e.g.*, *In re Marriage of Di Angelo* (1987), 159 Ill. App. 3d 293, 297, 512 N.E.2d 783, 786.

Given the short duration of the marriage, 28 months, and the uncontroverted and clear and convincing evidence of contributions made to the nonmarital house, evidence of appreciation in value was not required. We reverse the portion of the trial court's supplemental order which determined the improvements to the nonmarital house were not contributions subject to reimbursement. The amount contributed to Carl's house should be credited to the marital estate and divided according to the provisions of section 503 of the Act. Ill. Rev. Stat. 1987, ch. 40, par. 503.

The order of the circuit court of Vermilion County is affirmed in part and reversed and remanded in part.

Affirmed in part; reversed in part and remanded.

LUND and GREEN, JJ., concur.