2024 IL App (1st) 221485-U

No. 1-22-1485

First Division
December 23, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF: | ) | Appeal from the |
| | ) | Circuit Court of Cook County, Illinois |
| PATRICK MARTIN MAY, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 2018 D 8585 |
| | ) | |
| MARY LYDIA MAY, | ) | Honorable |
| | ) | Abbey Fishman Romanek |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*: Trial court did not err in granting petitioner-appellee's motion *in limine* where respondent-appellant failed to comply with the mandatory procedural requirements of the marital dissolution statute regarding claims for dissipation.

¶ 2    This case stems from dissolution of marriage proceedings between petitioner-appellee, Patrick Martin May (Patrick), and respondent-appellant, Mary Lydia May (Mary), pursuant to the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/101 *et seq.* (West 2018)). On October 1, 2018, Patrick filed a petition for dissolution of marriage. Mary answered the petition

and filed her own counter-petition on November 1, 2018. Neither petition specified a date as to when the parties believed the marriage had irretrievably broken down.

¶ 3    During discovery and motion practice, Mary filed a notice of intent to claim dissipation of marital assets against Patrick on February 4, 2020, and later amended it on May 29, 2020. Neither notice contained a date for irretrievable breakdown. Upon being ordered to respond, Patrick denied the allegations of dissipation, but did not challenge the lack of specified date.

¶ 4    After numerous continuances, trial commenced on August 24, 2021. On the first day of trial, Patrick filed a motion *in limine* to bar Mary from advancing her dissipation claims, arguing that Mary had failed to identify a date in which the parties' marriage had experienced a breakdown. Following argument, the trial court granted the motion. The next day, Mary filed a motion to reconsider the court's ruling, which was denied. After trial, the court entered a dissolution judgment, which did not consider Mary's dissipation claim. Mary's motion for reconsideration, which did not discuss the dissipation issue, was denied.

¶ 5    Mary now appeals, her sole contention being that the court's ruling on Patrick's motion *in limine* was in error and substantially prejudiced the ultimate outcome at trial. For the reasons that follow, we affirm the judgment of the trial court.

¶ 6                                I. BACKGROUND

¶ 7                        A. The Parties' Divorce Proceedings

¶ 8                        1. The Petitions and Early Litigation

¶ 9    The following facts are derived from the record on appeal. Patrick and Mary were married on May 5, 2001, in Chicago, Illinois. The parties did not have any children.

¶ 10    On October 1, 2018, Patrick filed a petition for dissolution in the circuit court of Cook County. Patrick alleged that irreconcilable differences had arisen between the parties which had caused the "irretrievable breakdown of the marriage," past attempts at reconciliation had failed, and future attempts would be impracticable. Notably, the petition did not list a specific date as to when Patrick believed the marriage had begun to break down

¶ 11    On October 9, 2018, Mary filed a counter-petition for dissolution. Her petition also alleged that irreconcilable differences had caused an "irretrievable breakdown of the marriage," but similarly did not specify an exact date of the breakdown. Mary also filed an answer to Patrick's petition on November 1, 2018, which admitted, *inter alia*, Patrick's allegations that irreconcilable differences had caused an irretrievable breakdown of the marriage, but again, without any specific date.

¶ 12                                    2. Dissipation Motion Practice

¶ 13    Throughout the course of litigation, Mary claimed that Patrick had dissipated marital funds. Because the parties quibble over whether the other had waived or forfeited any argument relating to such claims, we provide some context to those filings here.

¶ 14                        a. Mary's Petition for Contribution and Dissipation Claims

¶ 15    On February 4, 2020, Mary filed a petition for contribution for her attorney fees and costs. Therein, Mary also stated that she had learned of Patrick's potential dissipation of the marital estate. Specifically, she alleged that:

> "Patrick has engaged in a unilateral course of conduct which has directly resulted in the dissipation of the parties' marital estate for his own sole benefit in the amount of $198,731.85. Patrick's unilateral actions have resulted in the diminishment of the parties' marital estate, and in particular, the direct diminishment of each parties' take-home share

of the marital estate, upon entry of judgment. Mary has filed a *Notice of Intent to Claim Dissipation* regarding the same." (Emphasis in original.)

¶ 16    Mary attached her Notice of Intent to Claim Dissipation as an exhibit, which was also filed separately that same day. Therein, Mary alleged that Patrick had dissipated marital assets, which included: (a) cessation of depositing his employment checks into any of the parties' joint bank accounts; (b) failure to account for a cumulative total of an estimated total of $21,831.85 across several dates in July, August, and September of 2019; and (c) the transfer of an estimated $30,000 between various bank accounts on May 17, 2017. Mary further alleged that Patrick had either opened a separate bank account or had begun depositing his paychecks into his family business's bank account.

¶ 17    Mary additionally listed a variety of transactions that she believed to also constitute dissipation, occurring at various times in November and December of 2017. Mary claimed that Patrick withdrew approximately $288,185.50 from a sole bank account and a UBS brokerage account, which Patrick maintained was a non-marital asset. Mary also claimed that on August 5, 2019, Patrick transferred $60,000 from his UBS brokerage account into a joint account, and in turn used $40,000 of that money to pay his outstanding attorney fees and costs.

¶ 18    Finally, Mary stated that Patrick had unilaterally transferred and/or withdrew a cumulative $61,900 from various joint and sole bank accounts twice in August 2018 and twice in October 2018. As such, Mary sought reimbursement to the marital estate in the amount of $198,731.85. Notably, the notice did not specify a date in which Mary believed the parties' marriage to have suffered an irretrievable breakdown.

¶ 19    On May 29, 2020, Mary filed an amended notice of intent to claim dissipation. The amended notice also did not include a date on which the marriage had been irretrievably broken.

- 4 -

¶ 20 On January 8, 2021, the court continued the case for final pretrial status and, additionally, ordered Patrick to respond to Mary's amended dissipation notice by January 15, 2021.

¶ 21 On February 2, 2021, Mary filed a motion to continue trial asserting outstanding financial matters, including Patrick's response to the dissipation claims. Mary indicated that she was set to depose Patrick on this issue, which would not occur until later in February. Mary further asserted that Patrick continued to fail to comply with various court orders, such as filing a response to her amended dissipation notice by the court-ordered deadline. Relatedly, on that same day, Mary filed a verified petition for a finding of indirect civil contempt citing Patrick's noncompliance with the court's order to respond to the notice.

¶ 22 On February 3, 2021, the court granted Mary's motion to continue trial, continued Mary's petition for indirect civil contempt, and ordered Patrick to respond to the dissipation notices within 28 days.

¶ 23 On February 5, 2021, Patrick filed a response to Mary's dissipation notices which substantively denied her claims.[1] Patrick provided various explanations for each purported improper transaction. Notably, Patrick did not challenge any potential defects in Mary's initial or amended notices, including the failure to identify a date of irretrievable breakdown.

¶ 24                                 B. Trial Proceedings

¶ 25                             1. Patrick's Motion *in limine*

¶ 26 On August 24, 2021, the first scheduled day of trial, Patrick filed a motion *in limine* to bar Mary's initial and amended dissipation notices. Therein, Patrick argued that both notices were facially defective and substantively insufficient under the Act, and that he would be unduly

---

[1]Patrick's response does not appear separately in the record; rather, an unfiled version of his response is attached as an exhibit to his petition for contribution of attorney fees filed on August 9, 2021.

prejudiced by having to refute such claims. Relevant here, Patrick argued that both notices failed to allege a date or time period during which the marriage began undergoing an irretrievable breakdown as required by section 503(d)(2)(ii) of the Act (750 ILCS 5/503(d)(2)(ii) (West 2018)). Patrick reasoned that Mary's failure to identify when the breakdown took place did not allow him to refute the timeframe of the purported dissipation. Patrick indicated that he had attempted to inquire as to the perceived date or time period when he deposed Mary on March 30, 2021, but had been unable to receive a definitive answer beyond a general assertion that the breakdown took place about two years ago.

¶ 27    Before proceeding with trial, the court heard argument on Patrick's motion.[2] The bystander's report of the proceeding indicated that Patrick's argument was "consistent with his motion." In response to the motion, Mary's counsel argued that the parties' respective petitions for dissolution and answers delineated that a "breakdown had occurred on/around October or November 2018." Following argument, the trial court orally granted Patrick's motion, finding that Mary had failed to comply with section 503(d)(2) of the Act as both notices did not contain, "at minimum, a date or period of time during which the marriage began undergoing an irretrievable breakdown."

¶ 28                    2. Mary's Motion to Reconsider the Motion *in limine* Ruling

¶ 29    On August 25, 2021, Mary filed a motion captioned "Motion to Reconsider August 24, 2021 Ruling." [3] Therein, Mary argued that Patrick's motion *in limine* had been untimely and that

---

[2]No transcript of the hearing appears in the record, but the parties provided a certified bystander's report pursuant to Illinois Supreme Court Rule 323 (eff. July 1, 2017).

[3]In her briefs, Mary asserts that she erroneously captioned this motion as a motion to reconsider, but that the substance of the motion indicates that it was simply an attempt to revisit the court's interlocutory decision to bar her dissipation claims.

any objection to her dissipation notices had been waived based on his failure to challenge them in his earlier response. In fact, Mary pointed out, Patrick had substantively responded to her notices, and had never moved to strike either based on any procedural defects. As such, Mary reasoned, his response and explanation constituted an "admission of facts." Substantively, Mary asserted that Patrick's petition and her counter-petition had admitted that irreconcilable differences had caused the irretrievable breakdown of the marriage, and that the "parties acknowledge[d] as of October 1, 2018" as such a date. Finally, Mary argued that barring her dissipation notices caused her substantial prejudice.

¶ 30 Patrick filed a motion to strike Mary's motion to reconsider. On August 27, 2021, the court denied Mary's motion and the trial continued.

¶ 31 3. Trial Testimony[4]

¶ 32 Mary testified to various bank accounts held by Patrick, including accounts at UBS and Morgan Stanley. According to Mary, Patrick had opened the accounts during the marriage solely in his name, and such accounts had been initially funded with funds transferred from a non-marital bank account with Mary's name never added to them. Mary believed that the accounts had been comingled with additional funds during the marriage, but she did not provide any evidence relating to the source of any deposit following Patrick's initial deposit. She also did not testify to any of her own contributions into the accounts. Finally, Mary did not provide any testimony as to any transfer of funds between such accounts before October or November of 2018, around the time Patrick's petition for dissolution was filed.

---

[4]A court reporter was not present during the trial, and thus, in reciting the testimony we rely on the parties' certified bystander's report.

¶ 33    Patrick testified that, at the time of filing his petition, he had been previously employed at Sorini Manufacturing, his family's business. However, in December 2019, Sorini was sold and Patrick received a pre-tax amount of $430,000 in the sale, and then an additional $75,000. Patrick held bank accounts at Fifth Third Bank, one in his name, and the other held jointly with Mary. He had paid his attorney about $87,000 in legal fees and owed about $36,000. Patrick had transferred funds previously held in a Morgan Stanley IRA account to a UBS account, which had been opened prior to the marriage. On adverse examination, Patrick was asked about the source of various deposits that occurred "after the marriage, but prior to April 30, 2021." He responded that he "did not have specific recollection beyond what was on the statements." Patrick was also asked on adverse examination about deposits made into his UBS account that "occurred after the marriage, but prior to April 30, 2021," to which he responded that he did not have a specific recollection as to those sums without further explanation.

¶ 34    Notably, the bystander's report states that: "[a]t no point during the trial did Mary make an offer of proof pertaining to the issue of dissipation or otherwise renew her efforts to introduce evidence pertaining to Patrick's alleged dissipation."

¶ 35                    C. Trial Court Dissolution Judgment

¶ 36    On November 1, 2021, the trial court entered a written order of judgment for dissolution of marriage making specific findings on the parties' assets, none of which are raised as issues here on appeal.  Notably the court's judgment order did not indicate a date in which the court determined the marriage to have undergone an irretrievable breakdown. The order noted that there was no just reason for delaying enforcement or appeal of the judgment.

¶ 37                    D. Mary's Motion to Reconsider the Dissolution Judgment

¶ 38    On November 30, 2021, Mary filed a motion to reconsider the dissolution judgment, to which Patrick responded. Notably, the motion did not seek reconsideration of the trial court's prior ruling on the motion *in limine*.

¶ 39    On August 15, 2022, following hearing,[5] the court denied the motion. This appeal followed.

¶ 40                                                    II. ANALYSIS

¶ 41                                                    A. Jurisdiction

¶ 42    Although not raised by the parties, we have an independent duty to assess our jurisdiction to review this appeal, which is only established when a party files a timely notice. *State Farm Fire & Casualty Co. v. John J. Rickhoff Sheet Metal Co.*, 394 Ill App. 3d 548, 556 (2009). Illinois Supreme Court Rule 301 permits an appeal as of right of every final judgment in a civil case. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). If a party files a post-judgment motion within 30 days of the original judgment, a party's notice of appeal must be filed within 30 days of entry of the order disposing the last pending post-judgment motion. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017).

¶ 43    Here, the trial court entered a final dissolution judgment on November 1, 2021. See *Treece v. Shawnee Community Unit School District No. 84*, 39 Ill. 2d 136, 139 (1968) (a final order is one that "disposes of the rights of the parties, either upon the entire controversy or upon some definite and separate part thereof.") (Internal citations omitted.)) Mary filed a motion to reconsider within 30 days of the judgment on November 30, 2021, which was denied on August 31, 2022. Mary's notice of appeal was then filed on September 30, 2022, within 30 days of that order. Thus, we have jurisdiction to review the final judgment of this case, which includes the trial court's order granting

---

[5]The report of proceedings reflects August 15, 2019, as the date of the argument on the motion, but it is clear from the record that argument occurred in 2022, following entry of the dissolution judgment.

Patrick's motion *in limine*, as "[a]n appeal from a final judgment draws into issue all previous interlocutory orders that produced the final judgment." *In re Marriage of Gabriel and Shamoun*, 2020 IL App (1st) 182710, ¶ 33.[6]

¶ 44                                B.  Issues on Appeal

¶ 45     Before proceeding, we must first determine what, if any, issues have been properly preserved for our review. In her opening brief, Mary states that this appeal "seeks review of the trial court's denial of [her] dissipation claims." In that regard, she offers as "issues presented" (1) that any challenges to the defects contained within her dissipation notices were waived when Patrick filed a response; (2) the defect was cured by judicial admission; and (3) the dissipation provision's use of the term "shall" is directory, not mandatory. Unsurprisingly, Patrick responds that he did not waive or forfeit his procedural challenge, but rather, it was Mary who committed fatal forfeiture across multiple aspects of her case.

¶ 46     After reviewing the record, we agree that a majority of Mary's arguments are forfeited on appeal. Her waiver and judicial admissions arguments were raised for the first time in her motion for reconsideration and thus, cannot survive waiver. See *Pinske v. Allstate Property and Casualty Insurance Co.*, 2015 IL App (1st) 150537, ¶ 18 (issues not raised in the trial court are improper and deemed waived if raised for the first time on appeal); *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 36 (arguments raised for the first time in a motion to reconsider before the trial court are also forfeited on appeal). However, Mary's challenge to the statutory requirement for inclusion of the date of irretrievable breakdown, though framed differently here, was presented in

---

[6]Mary's docketing statement to her appeal indicated that she sought to challenge the trial court's "[a]llocation and [c]lassification of [m]arital [p]roperty." None of those issues were argued in her brief, and thus are forfeited. See *In re Marriage of Gabriel and Shamoun*, 2020 IL App (1st) 182710, ¶ 33.

her motion for reconsideration. Thus, we deem her argument regarding the statue's irretrievable breakdown date requirement to have been preserved.

¶ 47 However, we must point out that Mary's argument here on appeal suffers a more fundamental defect. Although the practical effect of the court's grant of Patrick's motion *in limine* is a denial of her dissipation claims, the court entered no such order. To have denied the claims would have required the court to hear evidence in support of the claim, the very thing the court barred by granting Patrick's motion *in limine*. As such, Mary's characterization of the court's ruling is not only a misrepresentation of the record, but is also misleading for our review.

¶ 48 That said, the record reflects that the argument of most critical import in Patrick's motion *in limine*, and the one upon which the court based its ruling, was that Mary's dissipation notice failed to include the marriage breakdown date. Here, on appeal, Mary asserts that the dissipation statute's use of the term "shall," as it relates to the date of the marriage breakdown, is directory. Thus, at its core, the "issue presented" regarding the statute's date requirement challenges the trial court's ruling on the motion *in limine* on that basis. Accordingly, as properly framed, the single issue on appeal is whether the trial court erred in granting the motion *in limine* to bar evidence of the alleged dissipation based on the absence of the marriage breakdown date in the notice.

¶ 49                                    C. Standard of Review

¶ 50 "A ruling on a motion *in limine* is a determination addressing an admissibility of evidence issue likely to arise at trial[.]" *Bailey v. Mercy Hospital and Medical Center*, 2020 IL App (1st) 182702, ¶ 120, *rev'd on other grounds*, 2021 IL 126748 (quoting *Sullivan-Coughlin v. Palos Country Club, Inc.*, 349 Ill. App. 3d 553, 561 (2004). Generally, we review a trial court's decision on a motion *in limine* for abuse of discretion. *Cundiff v. Patel*, 2012 IL App (4th) 120031, ¶ 18. Thus, the trial court's ruling on such motions will not be disturbed unless no reasonable person

would take the view adopted by the court. *Schiller v. HomeServices of Illinois*, 2024 IL App (3d) 220405, ¶ 28. Moreover, even if an abuse of discretion occurred, reversal is not warranted unless the record establishes that it created substantial prejudice affecting the trial's outcome. (Internal quotations and citations omitted.) *Id.*

¶ 51                                            D. Arguments

¶ 52                                   1. Forfeiture and Offer of Proof

¶ 53    Patrick argues that Mary forfeited her dissipation claims entirely by failing to make a required offer of proof at trial pursuant to Rule 103 of the Illinois Rules of Evidence. Mary maintains that she preserved the issue of dissipation during trial by filing a motion to reconsider the court's ruling on the motion *in limine*, despite not raising the issue again during trial or in a posttrial motion.

¶ 54    The purpose of a motion *in limine* is to bring to the trial court's attention, prior to trial, evidence that is potentially irrelevant, inadmissible, or prejudicial, and to obtain a pretrial ruling on whether the evidence may be admitted. *Snowstar Corp. v. A&A Air Conditioning & Refrigeration Service, Inc.*, 2024 IL App (4th) 230757, ¶ 63. Such motions are interlocutory in nature and thus are subject to reconsideration throughout the trial. *Douglas v. Arlington Park Racecourse, LLC*, 2018 IL App (1st) 162962, ¶ 79. This is because events during trial may still affect the court's understanding of the probative value of the evidence, the risk of unfair prejudice to the party opposing the evidence, or the evidence's trustworthiness. *People v. Denson*, 2013 IL App (2d) 110652, ¶ 9; *County of Peoria v. Couture*, 2022 IL App (3d) 210091, ¶ 86 ("The court reserves the right to change its mind as the trial unfolds and as the context becomes clearer for the evidence in question.") Thus, whether granted or denied, motions *in limine* are generally not considered preserved for purposes of appellate review. See *Sullivan-Coughlin*, 349 Ill. App. 3d at

561; *Patel*, 2012 IL App (4th) 120031, ¶ 20; *Denson*, 2014 IL 116231, ¶ 19 (a motion *in limine* does not, by itself, preserve an objection to the admission of the disputed evidence).

¶ 55    In order to preserve any evidentiary issues for appellate review, a party must either object to the evidence at trial or make an offer of proof. *Bailey*, 2020 IL App (1st) 182702, ¶ 120. Relevant here, where the trial court grants a motion *in limine* to exclude evidence, courts have stated that the proponent's failure to make an offer of proof regarding the disputed evidence at trial forfeits appellate review. See *Patel*, 2012 IL App (4th) 120031, ¶ 20; *Sullivan-Coughlin*, 349 Ill. App. 3d at 561 (to preserve an error in the exclusion of evidence, the proponent of the evidence must make an adequate offer of proof in the trial court); *Zickuhr v. Ericsson, Inc.*, 2011 IL App (1st) 103430, ¶ 63 (same). The Illinois Rules of Evidence, amended in 2015, also provide similar guidance concerning the preservation of claims of error in civil cases. Specifically, Rule 103(b)(3) provides that, to preserve a claim for appeal in a civil case where a court has already made a ruling before or at trial concerning the admission of evidence, a proponent must still make a contemporaneous trial objection or offer of proof to preserve a claim of error for appeal. Ill. R. Evid. 103(b)(3) (eff. Oct. 15, 2015). However, if a trial court clearly understood the "nature and character" of the offered evidence, an offer of proof is not necessary to preserve the exclusion ruling. *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 495-496 (2002) (no offer of proof required to preserve trial court's exclusion of expert testimony, where trial court understood that second witness would provide cumulative evidence to first witness); *In re Estate of McDonald*, 2022 IL 126956, ¶¶ 85-88 (distinguishing *Dillon* factually, but finding failure to preserve exclusion of witness testimony where record was unclear as to what testimony may have been presented and thus trial court could not have understood nature and character of evidence sought to be introduced); *County of Peoria*, 2022 IL App (3d) 210091, ¶¶ 88-89 (distinguishing *Dillon*

factually, but finding forfeiture of challenge to circuit court's granting of motion *in limine*, where proponent made no offer of proof and circuit court was not "well apprised" about what the excluded testimony would have entailed).

¶ 56    Here, it is true that Mary sought reconsideration of the court's ruling on the motion *in limine* during trial, which was denied by the court. However, regardless of how the motion for reconsideration was captioned, based on the bystander's report, it appears—and Mary apparently concedes—that she never sought to make any offer of proof concerning her dissipation claims during either her or Patrick's trial testimony. See *Schuler v. Mid-Central Cardiology*, 313 Ill. App. 3d 326, 334 (2000) (a motion *in limine* merely presents, in a pretrial setting, an issue of admissibility *likely* to arise at trial). Indeed, the report expressly states that "at no point during the trial did Mary make an offer of proof pertaining to the issue of dissipation or otherwise renew her efforts to introduce evidence pertaining to Patrick's alleged dissipation." On these facts, however, we believe that no offer of proof was necessary to preserve the ruling for our review.

¶ 57    In his motion, Patrick largely offered responses intended to refute Mary's dissipation claims. However, his major contention was that Mary had failed to comply with the Act's requirement that the dissipation notice contain the date(s) of which the marriage suffered an irretrievable breakdown. Without such, Patrick argued, he would be unable to defend against Mary's claims. In granting the motion, the court stated that Mary had failed to comply with the statutory requirement of identifying the date of the irretrievable breakdown of the marriage. Clearly, the evidence was not barred because it was either irrelevant, inadmissible or prejudicial. Instead, the motion was granted based on a pleading defect in the dissipation notice. Thus, no offer of proof was necessary for the court to understand the nature of the evidence being proffered, which likely would have been the details addressing the court's basis for allowing the motion in

the first place, that being the time period of the marriage's irretrievable breakdown. Offer of proof or not, Mary would likely not have been permitted to cure her pleading defect at this stage of the proceedings without running afoul of the notice requirements under the Act. See 750 ILCS 5/503(d)(2) (West 2018).

¶ 58     Thus, we hold that, on these facts, no offer of proof was necessary to preserve the issue of the court's ruling on the motion *in limine* for our review. By this holding, we intend no broad application or exception to the general rule requiring an offer of proof. On these particular facts, however, where such an offer was neither necessary to the court's understanding of the issue nor would it have had any curative effect on the defective pleading, the offer would have been ineffectual. Given our holding, we need not address the parties' remaining arguments regarding waiver.

¶ 59                         2. The Dissipation Provision of the Act

¶ 60     However, our analysis does not end there. We must next determine whether the court abused its discretion in granting the motion *in limine* on the procedural basis that Mary's dissipation notices did not comply with the Act. According to Mary, the dissipation provision of the Act was "directory" rather than "mandatory" in its command, where the court may have had some discretion in allowing her dissipation claims to continue.

¶ 61     Resolving this contention requires that we construe section 503(d)(2) of the Act. As we do in every case of statutory interpretation, we look to the Act itself, where it is well-established that the legislature's intent is best shown through the plain language of the statute. *Arient v. Shaik*, 2015 IL App (1st) 133969, ¶ 19. "When the statutory language is clear and unambiguous, it is given effect as written without resort to other aids of statutory interpretation." *State ex rel. Leibowitz v. Family Vision Care, LLC*, 2020 IL 124754, ¶ 35. "A court must view the statute as a

whole, construing words and phrases in light of other relevant statutory provisions and not in isolation." *Id*. "Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be render superfluous." *Id.* "The court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another." *Id.* Courts also presume that "the General Assembly, in its enactment of legislation, did not intend absurdity, inconvenience, or injustice." *Id.* Our review of the trial court's ruling on this matter is *de novo*. *In re Marriage of Rogers*, 213 Ill. 2d 129, 135 (2004).

¶ 62 Under the Act, a court may enter a marital dissolution judgment upon a finding that "irreconcilable differences have caused the irretrievable breakdown of the marriage," and that all efforts at reconciliation have failed or future attempts would be impracticable. 750 ILCS 5/401(a) (West 2018). "[A] trial court's authority to act in dissolution proceedings is conferred only by statute" and thus it "may not rely upon its general equity powers." *In re Marriage of Ignatius*, 338 Ill. App. 3d 652, 657 (2003); see also *In re Marriage of Blum and Koster*, 377 Ill. App. 3d 509, 526 (2007), *rev'd on other grounds*, 235 Ill. 2d 21 (2009) ("The dissolution of marriage is entirely statutory in origin and nature, and courts in dissolution cases must exercise their powers within the limit of the Act."). Before judgment, a court must consider and make provisions for the disposition of property. 750 ILCS 5/401(b) (West 2018). Prior to distribution, the court must first classify the property as either marital or nonmarital. 750 ILCS 5/503(a) (West 2018); *In re Marriage of Stuhr*, 2016 IL App (1st) 152370, ¶ 49.

¶ 63 In making determinations between marital and non-marital property, the Act considers dissipation of marital assets. See 750 ILCS 5/503(d)(2) (West 2018) (outlining factors for courts to consider when assigning each spouse's non-marital property and further dividing the marital

estate). "The concept of dissipation is premised upon waste," specifically the "diminution in the marital estate's value due to a spouse's actions." *In re Marriage of Brown*, 2015 IL App (5th) 140062, ¶ 67. Put another way, "[d]issipation occurs when one spouse uses a marital asset for his or her sole benefit unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown." (Internal citations omitted.) *In re Marriage of Stuhr*, 2016 IL App (1st) 152370, ¶ 65.

¶ 64 The party alleging dissipation must make a preliminary, or *prima facie*, case for dissipation by filing a notice of such claims. *In re Marriage of Hamilton*, 2019 IL App (5th) 170295, ¶ 78; *In re Marriage of Brown*, 2015 IL App (5th) 140062, ¶ 66. Specifically, section 503(d)(2) of the Act provides, in its entirety, that a claim for dissipation is subject to the following notice conditions:

"(i) a notice of intent to claim dissipation shall be given no later than 60 days before trial or 30 days after discovery closes, whichever is later; (ii) *the notice of intent to claim dissipation shall contain, at a minimum, a date or period of time during which the marriage began undergoing an irretrievable breakdown*, an identification of the property dissipated, and a date or period of time during which the dissipation occurred; (iii) a certificate or service of the notice of intent to claim dissipation shall be filed with the clerk of the court and be served pursuant to applicable rules; (iv) no dissipation shall be deemed to have occurred prior to 3 years after the party claiming dissipation knew or should have known the dissipation, but in no event prior to 5 years before the filing of the petition for dissolution of marriage." (Emphasis added.) 750 ILCS 5/503(d)(2) (West 2018).

¶ 65 Essential to a dissipation claim is the date in which a marriage begins to undergo an irreconcilable breakdown, as dissipation is to be calculated from that time period onward. 750 ILCS 5/503(d)(2)(ii). Moreover, the requirement to list a time period is important because

dissipation claims are limited temporally to claims dating back three to five years prior to the party's actual or imputed knowledge of the dissipation. 750 ILCS 5/503(d)(2)(iv) (West 2018). Accordingly, if the party alleging dissipation makes a *prima facie* showing, the burden then shifts to the party charged with dissipation to show, by clear and specific evidence, how the funds were spent. *In re Marriage of Hamilton*, 2019 IL App (5th) 170295, ¶ 78; see *In re Marriage of Adams*, 183 Ill. App. 3d 296, 301 (1989).

¶ 66    Section 503(d)(2)'s notice requirement became effective on January 1, 2013, well before the filing of either parties' petitions in this case. See Pub. Act 97-941, § 5 (eff. Jan. 1, 2013) (amending 750 ILCS 5/503(d)(2). Prior to this amendment, courts exercised their equitable authority to determine the propriety of a dissipation claim in accordance with fairness concerns. See *In re Marriage of Hamilton*, 2019 IL App (5th) 170295, ¶¶ 75-76 (discussing resolution of dissipation claims prior to statutory changes). Significantly, the cases prior to this amendment emphasized the importance of the party alleged to have dissipated assets being given sufficient notice to refute the claim. *Id.* ¶ 75.

¶ 67    Notably, and although relatively unacknowledged by Mary in her brief, the notice requirements have been interpreted as mandatory by at least one court. See *id.* ¶ 76 (observing the effect of section 503(d)(2)(i)'s language that "requisite notice '*shall*' be given.") (Emphasis theirs.); see also *In re Marriage of Tarbouche and Ennab*, 2023 IL App (1st) 211145-U, ¶¶ 133-141; *In re Marriage of Majewski*, 2023 IL App (2d) 220050-U, ¶ 81; compare *In re M.I.*, 2013 IL 113776, ¶ 19 (noting that the word "shall" has never been determinative of whether a statute is mandatory or directory in nature). However, Mary urges us to hold that the use of the word "shall" in section 503(d)(2)(ii) is not dispositive, and that we can find the statute to be directory in nature because "no particular consequence flows from noncompliance" with the provision, citing *In re*

*M.I.*, 2013 IL 113776, and *People v. Delvillar*, 235 Ill. 2d 507 (2009), in support.[7] Mary contrasts section 503(d)(2)(i) of the statute, which prohibits untimely dissipation notices, against section 503(d)(2)(ii), which, according to her, does not contain a similar consequence.

¶ 68    "Whether a statutory command is mandatory or directory is a question of statutory interpretation[.]" *In re M.I.*, 2013 IL 113776, ¶ 15. Statutes are presumed mandatory "if the intent of the legislature dictates a particular consequence for failure to comply with the provision." *Id.* ¶ 16. A statute is deemed "directory" if no such intent can be found and "no particular consequence flows from noncompliance." (Internal citations and quotations omitted.) *Id.* Although there is a presumption that statutory language issuing a procedural command indicates an intent for it to be considered directory, this presumption is overcome when either (1) "there is negative language prohibiting further action in the case of noncompliance" or (2) "when the right the provision is designed to protect would generally be injured under a directory reading." *Id.* ¶ 17.

¶ 69    As noted above, at least one court has found section 503(d)(2) to be mandatory in nature, albeit its analysis was focused on the timing of the notice's filing rather than the claims themselves. See *In re Marriage of Hamilton*, 2019 IL App (5th) 170295, ¶¶ 75-76 (holding that subsection 503(d)(2)(i) requiring the filing of a notice no later than 60 days before trial or 30 days before the closure of discovery was mandatory in nature). However, the *Hamilton* court focused on the statute's use of the phrase "shall," which we find instructive for our interpretation of the remainder of the provision. *Id.* ¶ 76. Indeed, the statute shows that all individual requirements for a *prima facie* dissipation claim utilize the word "shall," beginning with the time period in which one is

---

[7] We observe that Mary's brief does not differentiate between issues of "mandatory" and "permissive" legislation, versus "mandatory" and "directory" statutes, as discussed within her cited cases. There is a conceptual difference. See *Delvillar*, 235 Ill. 2d at 514-517 (2009).

allowed to file a dissipation claim during pretrial proceedings (found in section 503(d)(2)(i)), the minimum allegations the claim must allege (found in section 503(d)(2)(ii)), the filing rules associated with bringing the claim (found in section 503(d)(2)(iii)), and the statute of limitations governing the claims (found in section 503(d)(2)(iv)). Notably, Mary does not contend that *In re Marriage of Hamilton* improperly determined that subsection 503(d)(2)(i) was mandatory. Instead, she argues that the two provisions can be interpreted differently. Thus, her construction of the statute essentially asks us to determine that one part of the statute is mandatory while the other is not. To do so would run afoul of basic statutory interpretation principles that dictate that we read statutes as a cohesive whole, and construe it to give each word, clause, and sentence a reasonable meaning that does not render a term or phase superfluous. *Mitchell v. Village of Barrington*, 2016 IL App (1st) 153094, ¶ 34.

¶ 70     We also observe that, in ruling that the dissipation provision was mandatory, the *Hamilton* court observed that the cases interpreting the statute prior to its amendment focused on ensuring that the party alleged to have dissipated funds had sufficient notice of the charges in order to have the chance to refute them, given that certain facts underlying such claims often "remain hidden until they are uncovered during" the discovery process. *Id.* ¶ 75. The *Hamilton* court recognized that the provision's amendment would have likely changed the results of those cases, especially where dissipation was found "*sua sponte*," but nevertheless still found that a dissipation claim was proper where it complied not only with the express requirements of the statute, but also with "notions of fairness" that animated prior cases. *Id.* ¶ 76. Thus, where the dissipation provision, pre- and post-amendment, is designed to protect the rights of those alleged to have dissipated funds pursuant to traditional notions of fairness, interpreting the statute otherwise would injure those rights. See *In re M.I.*, 2013 IL 113776, ¶ 17.

¶ 71    Additionally, we also find the statute's language to be mandatory in nature because the provision includes negative language prohibiting further action in the event of the proponent's noncompliance. *Id.* ¶ 17. Although it is true that the statute does not expressly state that a claim is defective if all of its requirements are not met, the beginning of subsection 503(d)(2) provides that "a party's claim of dissipation *is subject to the following conditions*[.]" (Emphasis added.) 750 ILCS 5/503(d)(2). Thus, if all the above listed criteria were not met, a party would not be able to bring a dissipation claim to trial. This interpretation comports not only with the fairness considerations discussed above, but also with well-established precedent concerning the trial court's limited discretion in dissolution proceedings, where its powers are "entirely statutory in nature and origin." *In re Marriage of Blum and Koster*, 377 Ill. App. 3d at 526; *In re Marriage of Ignatius*, 338 Ill. App. 3d at 657. As such, we interpret all provisions of the dissipation statute to be mandatory in nature, meaning that all elements of a *prima facie* claim for dissipation as outlined in section 503(d)(2) must be met prior to trial.

¶ 72    Returning to the record, it is clear that, although Mary's notices alleged the dates and transactions which she believed to constitute dissipation, she failed to provide the date upon which she believed the marriage to have begun experiencing an irretrievable breakdown, thus rendering her filings defective and in violation of the Act. Moreover, Mary's contention that her answer to Patrick's petition "admitted" that the marriage had broken down in November 2018 would not cure her pleading defect, especially where other proceedings indicate that even her own proposed dates were not particularly definitive, given that her counsel argued during the hearing on the motion *in limine* and even on appeal that the date of breakdown could also be in or around October 2018. Additionally, we observe that the dissipation notices included allegations that Patrick had engaged in financial misconduct even before their respective petitions were filed. See *In re*

*Marriage of Holthaus*, 387 Ill. App. 3d 367, 375-376 (2008) (reversing and remanding for recalculation of dissipation claims based on confusion regarding the beginning of an irreconcilable breakdown). Thus, the lack of consistency concerning this required date is emblematic of the reasons underlying the amended dissipation provision.

¶ 73    Accordingly, given these considerations, we do not find that the trial court erred in granting Patrick's motion *in limine* which barred Mary from asserting a claim for dissipation at trial, as she did not adhere to the express statutory requirements of the Act. As such, the court's decision was not an abuse of discretion, and we affirm the court's ruling.

¶ 74                                III. CONCLUSION

¶ 75    For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

¶ 76    Affirmed.